IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEAIRA BOOKER,                          )
                                        )
                  Plaintiff,            )          2:19-CV-01649-CCW
                                        )
        vs.                             )
                                        )
BOROUGH OF NORTH BRADDOCK,              )
LARRY BUTLER, AND ISAAC DANIELE,        )
                                        )
                  Defendants.           )

## Opinion

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6).  ECF No. 28.  For the reasons stated below, Defendants' Motion will be GRANTED IN PART and DENIED IN PART.

## I.    Factual Background

The following factual allegations, relevant to the Court's ruling on Defendants' Motion, are taken from Plaintiff Keaira Booker's Second Amended Complaint, ECF No. 27.

Plaintiff alleges that on August 19, 2019, she saw Defendant Larry Butler ("Butler"), a police officer for the Borough of North Braddock ("Borough"), making a traffic stop in the Borough.  *Id.* at ¶¶ 22–23.  Plaintiff claims to have seen Butler questioning an unidentified person and searching the person's vehicle.  *Id.* at ¶ 24.  From her parked car, Plaintiff began making a video recording of the encounter.  *Id.* at ¶¶ 23, 25.  Butler noticed Plaintiff taking a video, approached her car, and informed her that she was "blocking the roadway" and "needed to move on."  *Id.* at ¶¶ 26, 28.  Plaintiff alleges that her car was, in fact, legally parked, but she complied with Butler's request anyway, moving her car closer to the curb and again parking.  *Id.* at ¶ 27.

1

After concluding his interaction with the unnamed person, Butler again approached Plaintiff's car. *Id.* at ¶ 29.  Plaintiff also recorded this interaction.  *Id.* at ¶¶ 32–33.  Butler demanded to see Plaintiff's identification, citing her car as having been illegally parked earlier.  *Id.* at ¶¶ 30-31.  Butler then "threatened to arrest her if she didn't provide/produce her identification."  *Id.* at ¶ 34.  Plaintiff disputed Butler's claim that her car had been parked illegally and asked for his name.  *Id.* at ¶¶ 32, 35.  According to Plaintiff, Butler then "reached through the window of her driver's side door, unlocked the door, and forcibly removed [Plaintiff] from her car."  *Id.* at ¶ 36.  Butler arrested Plaintiff, put her in handcuffs, and instructed another officer to search her.  *Id.* at ¶¶ 37–38.

Plaintiff's car was towed, and she was taken to the North Braddock Police Station (the "Station") where her mother, Jessica Booker, arrived some time later.  *Id.* at ¶¶ 39, 42–43.  According to the Second Amended Complaint, Jessica Booker played the recording from Plaintiff's cell phone for Butler, and Butler agreed that Plaintiff's car had been legally parked.  Plaintiff was eventually released from custody, but the matter did not end there.  *Id.* at ¶¶ 44.

According to the Second Amended Complaint, at some point between Plaintiff's arrival at the Station and her subsequent release, Defendant Isaac Daniele ("Daniele"), the Borough's Chief of Police, watched the video recording Plaintiff had made on her cell phone.  *Id.* at ¶ 48.  Allegedly recognizing that Butler's conduct had crossed a line, Butler and Daniele together "manufacture[d] criminal charges to file against [Plaintiff] to conceal violations of [Plaintiff's] civil rights."  *Id.* at ¶ 47.  Plaintiff was criminally charged with disorderly conduct under 18 Pa. C.S.A. § 5503.  *Id.* at ¶ 50.  The Second Amended Complaint alleges that, as the arresting officer, Butler filled out the arrest report and citation, which was "signed off on and approved by" Daniele.  *Id.* at ¶¶ 51–52.  Plaintiff was released from custody, after "being…detained for hours."  *Id.* at ¶ 53.  Plaintiff

appeared in Magisterial District Court on November 7, 2019, intending to dispute the charges against her, but the charges were dismissed at Butler's request. *Id.* at ¶ 54.

## II.   **Procedural Background**

Plaintiff initiated this lawsuit by filing the Complaint on December 20, 2019, ECF No. 1, and a First Amended Complaint on March 12, 2020.  ECF No. 20.  Defendants moved to dismiss the First Amended Complaint.  ECF No. 21.  Chief Judge Hornak, who previously presided over this case, granted Defendants' Motion in part and gave Plaintiff leave to amend.  ECF No. 26. Plaintiff filed her Second Amended Complaint on June 16, 2020, ECF No. 27, and Defendants again moved to dismiss.  ECF No. 28.  This matter was transferred to the undersigned on October 23, 2020, and Defendants' Motion is now ripe for disposition.

## III.   **Discussion**

In their Motion, Defendants challenge five of eight claims set out in the Second Amended Complaint.  Specifically, Defendants argue (1) that Plaintiff's claims against Daniele in Counts V, VI, and VII should be dismissed because Daniele's lack of "personal involvement" should afford him qualified immunity;  (2) that Plaintiff's claims against the Borough in Count III should be dismissed because *respondeat superior* is not a cognizable basis for municipal liability under *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978);  and (3) that Plaintiff's claim for intentional infliction of emotional distress ("IIED") against Butler in Count VIII should be dismissed because Plaintiff has failed to sufficiently allege a "tangible physical injury" and because the conduct alleged in the Second Amended Complaint is not sufficiently severe or outrageous as a matter of law.  *See* ECF No. 29.

### A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

Finally, if a civil rights claim is dismissed pursuant to Rule 12(b)(6), the Third Circuit has held that the district court must provide leave to amend "unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 233;  *see also Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) ("In our Circuit, 'district courts must offer amendment [in civil rights cases]—

irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.'") (citation omitted)).  Amendment is futile where an amended complaint could not withstand a renewed motion to dismiss.  *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

### B.  Plaintiff Sufficiently Pleads Daniele's Personal Involvement in the Decision to File Criminal Charges against Plaintiff

Defendants' Motion first challenges Plaintiff's claims against Daniele in his individual capacity for violation of her rights under the First and Fourth Amendments (Count V), malicious prosecution (Count VI), and abuse of process (Count VII).[1]

In Count V, Plaintiff asserts claims against Daniele for violations of her First and Fourth Amendment rights under two different, but factually related, theories.  First, Plaintiff claims that her initial seizure, search, arrest and detention were unlawful under the Fourth Amendment and conducted in retaliation for her engaging in protected First Amendment conduct—i.e., recording Butler.  ECF No. 27 at ¶¶ 119, 121, 123, 124.  Second, Plaintiff claims that that the subsequent filing of allegedly fabricated criminal charges against her was a further unlawful seizure in violation of her rights under the Fourth Amendment and, like the initial arrest, was in retaliation for her making a recording of Butler.  ECF No. 27 at ¶¶ 122, 125, 126, 127.

Plaintiff also sets out claims against Daniele for malicious prosecution and abuse of process under both 42 U.S.C. § 1983 and state law.  ECF No. 27 at ¶ 125, Count VI, Count VII.[2] Defendants' prior motion to dismiss Plaintiff's state law malicious prosecution and abuse of

---

[1] Counts V, VI, and VII also allege claims against Butler.  Defendants' Motion does not seek to dismiss these claims against Butler, and so the Court does not address them.

[2] *See, e.g., Reinsmith v. Borough of Bernville*, Civil Action No. 03-1513, 2003 U.S. Dist. LEXIS 23701, at *19–*25 (E.D. Pa. Dec. 16, 2003) (setting forth differing elements of claims for malicious prosecution and abuse of process under § 1983 and Pennsylvania law); *see also* ECF No. 26 at 4 ("The Defendants seek to dismiss the claims at Counts 7 and 8 as being duplicative.  The Court disagrees.  There are distinct elements to the torts of malicious prosecution and abuse of process, although they are related.").

process claims was denied by the Court (ECF No. 26 at 4), and Defendants do not raise any challenge to the state law claims in their Motion. Accordingly, the Court will confine its analysis to Plaintiff's § 1983 malicious prosecution and abuse of process claims against Daniele.

### 1. Defendants' Arguments

In seeking dismissal of Counts V, VI, and VII against Danielle, Defendants point out that "[g]enerally, in order to establish supervisory liability against government officials in their individual capacities under § 1983, a plaintiff must demonstrate that the officials were ***personally involved*** in the commission of the conduct alleged." ECF No. 29 at 3–4 (quoting *Snatchko v. Peters Twp.*, 2:12-cv-1179, 2012 U.S. Dist. LEXIS 182534, at *31 (W.D. Pa. Dec. 28, 2012) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988))) (emphasis in original). Defendants further argue that Daniele "is entitled to qualified immunity because the Second Amended Complaint does not plead sufficient facts to support a showing that he was personally involved with Plaintiff's claims in a manner other than indirectly under a theory of respondeat superior." ECF No. 26 at 4.

Defendants seemingly present two distinct, but closely related, arguments for dismissal of Plaintiff's claims against Daniele. First, Defendants posit that, on its face, the Second Amended Complaint fails to state a claim under § 1983 because it does not allege that Daniele was personally involved in any of the alleged violations. Second, they essentially argue that Daniele is entitled to qualified immunity under the first prong of the *Saucier* test—i.e. "whether the facts that plaintiff has alleged…make out a violation of a constitutional right"—again, because Daniele was not personally involved in the alleged violations. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (discussing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"Qualified immunity applies unless the official's conduct violated [a clearly defined constitutional right.]" *Pearson*, 555 U.S. at 224. According to the Third Circuit, "[t]he first question of the *Saucier* analysis is whether a constitutional violation occurred. This 'is not a question of immunity, but whether there is any wrong to address.'" *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (quoting *Ray v. Twp. of Warren*, 626 F.3d 170, 174 (3d Cir. 2010)). Thus framed, Defendants' Motion requires the Court to address (1) whether Daniele's conduct is actionable, i.e., whether the Second Amended Complaint sufficiently alleges Daniele's personal involvement such that supervisory liability would attach under § 1983, and (2) whether Daniele forfeited qualified immunity as to such conduct, i.e., whether his actions violated clearly established constitutional rights. *See Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006) (cautioning against "conflat[ing] qualified immunity with the merits of a plaintiff's cause of action under § 1983."); *see also Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985) (finding that "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim.").

### 2. Whether Plaintiff Sufficiently Pleads Supervisory Liability Under § 1983

To state a claim under § 1983, a plaintiff must establish (1) that the defendants were acting under color of state law and (2) that they deprived plaintiff of a right protected by the U.S. Constitution. *See Snatchko*, 2012 U.S. Dist. LEXIS 182534, at *14 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)). To plead a § 1983 retaliation claim, "a plaintiff must allege: (1) that he or she engaged in constitutionally protected conduct; (2) that the defendant took action sufficient to deter an ordinary person from engaging in such conduct; and (3) a causal connection between the two." *Jacobs v. City of Phila.*, No. 20-1967, 2020 U.S. App. LEXIS 37459, at *2–*3 (3d Cir. Dec. 1, 2020) (further noting that "[w]hen the alleged retaliation takes

the form of criminal charges, causation requires a showing that the charges were not supported by probable cause.").

To establish supervisory liability, as is the case here with respect to Daniele, a plaintiff must also demonstrate that the official was personally involved in the conduct alleged. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also, Bangura v. City of Phila.,* 338 F. App'x 261, 265 (3d Cir. 2009) ("In order to state a claim against Commissioner Johnson under § 1983, Bangura was required to allege facts demonstrating that the Commissioner had personal involvement in the allegedly deficient training.").  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Snatchko*, 2012 U.S. Dist. LEXIS 182534, at *31 (quoting *Rode*, 845 F.2d at 1207).  Furthermore, "[a]llegations of participation or actual knowledge and acquiescence…must be made with appropriate particularity," as, for example, where a complaint "states time, place, persons responsible." *Rode*, 845 F.2d at 1207 (citing *Boykins v. Ambridge Area School Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) and *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978)).

As noted above, the only element of Plaintiff's § 1983 claims against Daniele that Defendants challenge is whether Daniele was personally involved.  Defendants are correct that the Second Amended Complaint fails to plead facts sufficient to show that Daniele was personally involved in Plaintiff's initial arrest and detention.  According to the Second Amended Complaint, Plaintiff was arrested by Butler, searched by another, unnamed officer, and then transported to the Station on Butler's orders.  ECF No. 27 at ¶¶ 36–42.  Further, viewing the factual allegations in the Second Amended Complaint in the light most favorable to the Plaintiff, it does not appear that Daniele was aware of the encounter between Plaintiff and Butler (or the alleged violation of Plaintiff's civil rights) until *after* Plaintiff arrived at the Station and Daniele allegedly had an

opportunity to view the video recording.  *Id.* at ¶¶ 46–48.  Accordingly, the Court concludes that Plaintiff has not sufficiently alleged Daniele's personal involvement in Plaintiff's initial arrest and detention to establish supervisory liability with respect to that portion of Count V.  As such, to the extent Count V of the Second Amended Complaint makes claims against Daniele for the violation of Plaintiff's First and Fourth Amendment rights in connection with her initial arrest, search, seizure and detention on August 19, 2019, that portion of Count V will be dismissed without prejudice.  Plaintiff will be given leave to amend Count V to attempt to cure this defect.

That said, the Court finds that the factual allegations contained in the Second Amended Complaint are enough for Plaintiff's claims in Counts V, VI, and VII to survive a motion to dismiss as they relate to Daniele's personal involvement in the decision to file criminal charges against Plaintiff, allegedly in violation of her First and Fourth Amendment rights.  Here, Defendants advance an overly technical interpretation of "personal involvement," arguing that because Butler's name was on the arrest report and citation and because Butler, not Daniele, attended Plaintiff's preliminary hearing before the Magisterial District Court, "Chief Daniele was not involved other than allegedly rubber stamping Butler's arrest."  ECF No. 29 at 5.  Taken as true and viewed in the light most favorable to Plaintiff, however, the Second Amended Complaint's factual allegations do not portray Daniele's involvement as being nearly that attenuated.

Stripped of boilerplate allegations, the Second Amended Complaint claims that prior to the charges being filed, Daniele viewed the video recording of Plaintiff's encounter with Butler.  ECF No. 27 at ¶¶ 48–49.  The Second Amended Complaint further avers that, after reviewing the video, Daniele knew that the use of force and arrest were in retaliation for Plaintiff recording Butler and were without probable cause.  *Id.* at ¶ 48.  Finally, the Second Amended Complaint alleges that, "Officer Butler, the arresting officer, filled out an arrest report/citation" which was "signed off on

and approved by Chief Daniele." *Id.* ¶¶ 50, 52.  As such, the Second Amended Complaint has sufficiently alleged, at a minimum, that Daniele had actual knowledge of the circumstances of Plaintiff's arrest and acquiesced to the filing of the allegedly false report and criminal charges against her. *See Rode*, 845 F.2d at 1207.  Moreover, because Defendants' argument in favor of dismissal regarding Plaintiff's claims against Daniele in Counts VI and VII is predicated entirely on the same argument and the same alleged facts—i.e. lack of personal involvement—it, too, fails for the same reasons.  Plaintiff has sufficiently alleged Daniele's personal involvement in the filing of criminal charges against her.  Accordingly, with regard to Daniele, Count V, with the exception of the portions related to Plaintiff's initial arrest and detention, and all of Count VI and Count VII survive Defendants' Motion to Dismiss.

### 3.   Whether Daniele is Entitled to Qualified Immunity

Government officials sued in their individual capacity are entitled to qualified immunity for alleged violations of a plaintiff's civil rights "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d. Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In addressing a claim of qualified immunity, courts analyze "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right;  and (2) whether the right was clearly established at the time of the alleged misconduct." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Further, "district courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'"  *Bayer v. Monroe Cnt. Children & Youth Servs.*, 577 F.3d 186, 191-92 (3d Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Finally, "'qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is

established on the face of the complaint.'"  *Thomas*, 463 F.3d at 291 (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

### a.  Claims arising under the First Amendment

The Second Amended Complaint alleges in Count V that Daniele participated in violations of Plaintiff's rights under the First Amendment when he approved the filing of criminal charges against her.  ECF No. 27 at ¶ 125.  Plaintiff claims that these charges were "motivated [by] and unlawfully attempted to interfere with her right to be an activist and citizen of the Borough of North Braddock and record, document and report police misconduct, thereby violating her rights under the First Amendment" and "[s]aid conduct also violated her rights under the Fourth Amendment."  ECF No. 27 at ¶¶ 126–27.  In other words, Plaintiff claims the criminal charges were filed in retaliation for protected First Amendment conduct—specifically, recording Butler conducting a traffic stop of another person on a public street.

According to the Third Circuit, "under the First Amendment's right of access to information the public has the commensurate right to record—photograph, film, or audio record—police officers conducting official police activity in public areas."  *Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3d Cir. 2017).  And, "although the right to record police is not absolute," there is no indication from the Second Amended Complaint or Defendants' Motion that Plaintiff in any way "interfere[d] with police activity" by making her recording, such that her "activity might not be protected."  *Id.*  Indeed, the Second Amended Complaint makes clear that Plaintiff did not attempt to interfere with Butler during the traffic stop;  did not attempt to exit her vehicle;  and complied with Butler's request to move her vehicle, even though, according to the Second Amended Complaint, Plaintiff's vehicle was legally parked at all times.  ECF No. 27 at ¶¶ 23–27.  Furthermore, the right to record police officers, such as Butler, conducting official police activity,

such as a traffic stop, in a public area and without interfering with the police activity, was clearly established at the time Plaintiff was arrested and charges filed against her in August 2019. *See Karns v. Shanahan*, 879 F.3d 504, 524 n.12 (3d Cir. 2018) (noting that the right to record police officers in public "is now clearly established in this Circuit.").

As with the Court's discussion of the legal sufficiency of Plaintiff's claims, *supra*, the initial encounter between Plaintiff and Butler is not the end of the analysis. Thus, the issue for the purposes of Plaintiff's claims against Daniele in Count V, as it relates to Defendants' claim of qualified immunity, is not whether the *initial arrest* violated a clearly established right, but whether the *decision to file criminal charges*, allegedly without probable cause and in retaliation for Plaintiff recording Butler, *see* ECF No. 27 at ¶¶ 44–52 and 56–61, violated a clearly established right. Importantly, courts in this Circuit have found that pressing charges in the absence of probable cause, in retaliation for protected First Amendment conduct, is a "per se violation of clearly established law because police officers are required to know the probable cause requirement." *Montgomery v. Killingworth,* Civil Action No. 13cv3082, 2015 U.S. Dist. LEXIS 7152, at * 33 (E.D. Pa. Jan. 21, 2015) (citing *Losh v. Parkersburg*, 736 F.2d 903, 910 (3d. Cir. 1984)). According to the Second Amended Complaint, that is exactly what happened here: Plaintiff, who claims she was legally parked and lawfully recording Butler, was dragged from her vehicle, arrested, and then detained at the Borough police station. ECF No. 27 at ¶¶ 23–42. Daniele, even after reviewing video of these events, approved the filing of criminal charges against Plaintiff. *Id.* at ¶¶ 46–52. Thus, the Second Amended Complaint sufficiently pleads that Daniele's participation in the decision to file criminal charges violated clearly established rights, and therefore a grant of qualified immunity is not appropriate at this early stage of the case.

That said, while the Court does not find qualified immunity "established on the face of the complaint," *Thomas,* 463 F.3d at 291, the lack of a developed factual record at the 12(b)(6) stage does not permit the Court to determine that the charges actually lacked probable cause. *See Karloski v. Davis,* Civil Action No. 15-1101, 2018 U.S. Dist. LEXIS 68215, at *12–13 (W.D. Pa. Apr. 24, 2018) (noting that "[t]he fact that the charges were dismissed at the preliminary phase of Plaintiff's criminal case does not negate the existence of probable cause to support his initial arrest and detention.") (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *see also Reichle v. Howards,* 566 U.S. 658, 664–65 (2012) (finding the Supreme Court "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause."). Accordingly, while the Court declines to find that Daniele is entitled to qualified immunity at this juncture, Defendants may reassert the defense following development of the factual record.

### b. Claims arising under the Fourth Amendment

Next, according to Counts V and VI of the Second Amended Complaint, Plaintiff's "Fourth Amendment rights were violated" when Butler and Daniele "maliciously prosecut[ed] her" without probable cause and, therefore, "interfered with [Plaintiff's] liberty interests." ECF No. 27 at ¶ 125.

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A "seizure" under the Fourth Amendment occurs "when there is a governmental termination of freedom through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007). Plaintiff's claim for malicious prosecution under § 1983 likewise hinges on establishing that a "seizure" occurred. *See Reinsmith v. Borough of Bernville*, Civil Action No. 03-1513, 2003 U.S. Dist. LEXIS 23701, at *20 (E.D. Pa. Dec. 16, 2003) ("A plaintiff asserting a [federal] malicious prosecution claim must show some deprivation of liberty consistent with the concept of seizure.") (quoting *Bristow v. Clevenger*, 80 F. Supp. 2d 421, 429 (M.D. Pa. 2000)).

With respect to post-release/pre-trial deprivations of liberty, the Third Circuit has adopted the so-called "continuing seizure" theory, *Schneyder v. Smith,* 653 F.3d 313, 319 (3d Cir. 2011), which the court summarized as: "When the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment." *Id.* at 321-322. However, the Third Circuit's continuing seizure analysis is context specific and, importantly, "some conditions of pre-trial release may be so insignificant as to not implicate constitutionally protected liberty interests." *Black v. Montgomery Cnty.*, 835 F.3d 358, 367 n.7 (3d Cir. 2016). For example, while the court in *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) found a continuing seizure where plaintiff's interstate travel was restricted, he was required to post $10,000 bail, and he was required to report to pre-trial services weekly, the court in *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) declined to find a continuing seizure where plaintiffs were "only issued a summons;  they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services."

Here, it is not clear that Plaintiff was subjected to sufficient restrictions following her release from the Borough police station to "implicate constitutionally protected liberty interests." *Black*, 835 F.3d at 367 n.7.  Indeed, Plaintiff's Second Amended Complaint states only that she was arrested, charged, released and then required to appear before the Magisterial District Court. ECF No. 27 at ¶¶ 50–54.  Thus, the Second Amended Complaint contains insufficient factual matter for the Court to determine at this juncture whether any post-release restrictions placed on Plaintiff "implicate[d] constitutionally protected liberty interests," or were, instead, *de minimis*. *Black v. Montgomery Cnty.*, 835 F3d at 367 n.7.

Therefore, because "the Supreme Court 'repeatedly has stressed the importance of resolving immunity questions at the earliest possible stage in the litigation," *Thomas,* 463 F.3d at 291 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)), and in light of the *Thomas* court's directive that "a district court must avail itself of the procedures available under the Federal Rules to facilitate an early resolution of the qualified immunity issue," *id.* at 300, Plaintiff will be ordered to provide a more definite statement in the form of an amended pleading, pursuant to Rule 12(e), identifying "the factual basis underlying [Plaintiff's] claim for relief" with respect to the alleged post-release deprivation of liberty.  *Id.* at 301.

### c.  *Section 1983 Abuse of Process Claim*

Finally, with respect to Count VII, "a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'"  *Napier v. City of New Castle*, 407 Fed Appx. 578, 582 (3d Cir. 2010) (quoting *Rose v. Bartle*, 871 F.2d 331, 350 n. 17 (3d Cir. 1989).  "Thus, '[t]he gravamen of [a malicious abuse of process claim] is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings;  it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.'"  *Dunne v. Twp. of Springfield*, 500 Fed.Appx. 136, 138 (3d Cir. 2012) (quoting Restatement (Second) of Torts § 682 cmt. a) (1965)).  As discussed in section III.B.2, *supra*, Plaintiff has pled facts sufficient to state Daniele's personal involvement in the filing of the criminal charges against her.  She has further alleged that the charges against her were filed "to cover-up the illegal arrest, and search and seizure of [Plaintiff]" and "to harass and intimidate her."  ECF No. 27 at ¶¶ 57, 148, and were "motivated [by] and unlawfully attempted to interfere with her right to be an activist citizen…and record, document and report police misconduct, thereby violating her rights under the First

Amendment." *Id.* at ¶ 126.   As such, Plaintiff's claim in Count VII incorporates her First Amendment retaliation claim in that the abuse of process claim alleges the criminal charges were filed with the objective of dissuading Plaintiff from future recordings of police activity.

That said, while the Court is cognizant of the apparent conflict between Plaintiff's § 1983 malicious prosecution and abuse of process claims—with the former grounded on the initiation of proceedings without probable cause and the latter based on the misuse of process legitimately initiated, *see Napier,* 407 Fed.Appx. at 582–83—the existence of probable cause is, at this stage, an issue of fact that must be clarified through discovery.   *See Quinn v. Cintron,* 629 Fed. Appx. 397, 398 (3d Cir. 2015) ("[G]enerally, 'the question of probable cause in a section 1983 damage suit is one for the jury,'" but the existence of probable cause may be determined as a matter of law at summary judgment "'if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,'") (quoting *Merkle v. Upper Dublin Sch. Dist*., 211 F.3d 782, 788–89 (3d Cir. 2000).   Indeed, Plaintiff seems to appreciate this conflict, appearing to plead abuse of process as an alternative ground for relief.   *See* ECF No. 27 at ¶150 ("[Plaintiff] is entitled to recover damages...based on the theories of liability hereinafter enumerated in the above counts, and under such other theories of liability as may be appropriate based on the facts alleged herein or as revealed during discovery.").   Furthermore, the alleged intent to "harass and intimidate" Plaintiff with the criminal charges is a matter that requires factual determinations to be made following discovery.   Accordingly, as with Plaintiff's First Amendment Retaliation claim, the Court declines at this juncture to find that Daniele is entitled to qualified immunity on the § 1983 abuse of process claim, pending further development of the record.

### C.  The Second Amended Complaint States a Claim Against the Borough

Defendants next challenge Plaintiff's claims against the Borough in Count III of the Second Amended Complaint for failure to properly train, supervise and discipline and for unlawful custom/policy.  As with the § 1983 claims for First and Fourth Amendment violations against Daniele, Plaintiff appears to be pursuing two separate theories of liability against the Borough:  (1) that the Borough's alleged failure to train, supervise, or discipline resulted in the alleged violations of Plaintiff's constitutional rights, Second Amended Complaint, ECF No. 27 at ¶¶ 96–106;  and (2) that the Borough had a policy or custom of retaliating against citizens and activists for "publiciz[ing] and speak[ing] out about police misconduct," including where such individuals "have attempted to videotape, audiotape, or simply observe police interactions with citizens and criminal suspects."  *Id.* at ¶¶ 89–95.

Defendants argue that "Plaintiff attempts to impute liability to the Borough 'solely on a principal/agent relationship'" and that "the Borough cannot be deliberately indifferent to a pattern of unconstitutional practices if its only knowledge is this current litigation."  ECF No. 29 at 6 (quoting *Flood v. Sherk*, 400 F.Supp.3d 295, 313 (W.D. Pa. 2019)).  As such, Defendants assert that Plaintiff's failure to train/supervise claim is nothing more than "boilerplate" and should be dismissed for failing to make "a fact-based 'showing'" regarding "the adoption or implementation of a municipal policy by a 'final decisionmaker.'"  *Id.* at 5.  Defendants further point out that "[c]ustom liability under § 1983 requires policymakers to be *deliberately* indifferent to a pattern of unconstitutional practices—not carelessly indifferent, negligently indifferent, and certainly not vicariously indifferent."  *Id.* at 6 (quoting *Monell*, 436 U.S. 658, 674 (1978)).  In sum, Defendants attempt to show that the Second Amended Complaint alleges nothing more than *respondeat*

*superior* liability as to the Borough, which is "not a basis for assessing municipal liability for Constitutional violations under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)." *Id.* at 5.

According to the Supreme Court in *Monell*, a municipality may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694. In effect, "Monell…created a 'two-path track' to municipal liability, depending [upon] whether a 1983 claim is premised [upon] a municipal policy or custom." *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, Civ. A. No. 15-499, 2015 U.S. Dist. LEXIS 139907, at *30 (W.D. Pa. Oct. 14, 2015). "Under the 'policy' path, a local government unit may be 'sued directly if it is alleged to have caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.""" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988). "Under the 'custom' path, § 1983 authorizes suit 'for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the [government] body's official decisionmaking [sic] channels.'" *Id.* (quoting *Praprotnik*, 485 U.S. at 121). Finally, "[i]n proving either an unlawful policy or custom under § 1983, 'it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom.'" *Id.* at *31 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480–81 (3d Cir. 1990)).

The Third Circuit Court of Appeals has further delineated three ways a public entity can be found liable under § 1983 by way of its policy or custom:

> (1) where the alleged injury results from a public employee simply implementing a generally applicable statement of policy of the entity; (2) absent a generally stated policy, where the policymaker itself acts in violation of federal law; and (3) where the policymaker acts with deliberate indifference by failing to create new policies addressing the inadequacy of an existing practice likely to result in constitutional violations."

*Damiani v. W. Deptford Twp.*, Civil Action No. 07-2284, 2008 U.S. Dist. LEXIS 17581, at \*13–

\*14 (D. N.J. Mar. 7, 2008) (citing *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 584 (3d

Cir. 2003)).  These categories dovetail with the Third Circuit's finding that:

> An individual's conduct implements official policy or practice under several types
> of circumstances including when (1) the individual acted pursuant to a formal
> government policy or a standard operating procedure long accepted within the
> government entity, (2) the individual himself has final policy-making authority
> such that his conduct represents official policy, or (3) a final policy-maker renders
> the individual's conduct official for liability purposes by having delegated to him
> authority to act or speak for the government, or by ratifying the conduct or speech
> after it has occurred.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (citing *Pembaur v. City of*

*Cincinnati*, 475 U.S. 469, 478–84 (1986)).

Here, had Plaintiff charged the Borough with liability solely based on Butler's actions, the

Court would agree with Defendants that the claims in Count III should be dismissed.  *See Hill v.*

*Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) ("A municipality may not be held liable

under § 1983 for the constitutional torts of its employees by virtue of *respondeat superior*.").  But

that is not the case.  Rather, Plaintiff alleges that her arrest and the subsequent criminal charges

were the result of the Borough police's "custom or policy" of retaliating against citizens and

activists for recording Borough police officers.  *See* ECF No. 27 at ¶¶ 89–95.  And, importantly,

Plaintiff does not attribute these alleged violations to Butler (or other subordinate officers) alone.

Fairly read in the light most favorable to Plaintiff, the Second Amended Complaint claims that

Daniele, who allegedly was the Borough official responsible for overseeing its police department,

*see id.* at ¶¶ 13–15, ECF No. 27, not only acquiesced to this custom or practice but, in Plaintiff's

case at least, actively participated in it, thereby effectively ratifying Butler's allegedly unlawful

conduct by authorizing the filing of criminal charges against Plaintiff.  *See, e.g. Damiani*, 2008

U.S. Dist. LEXIS 17581, at \*14–\*15 (declining to dismiss where Plaintiff pled that the chief of

police was "a policy maker" with "decisional authority of and for the West Deptford Township Police Department").  Daniele's alleged responsibility for police training and discipline, ECF No. 27 at ¶ 13, and alleged personal involvement in Plaintiff's case further supports the claim that the Borough was deliberately indifferent to the need to properly train, supervise or discipline its police officers.  Thus, the Second Amended Complaint's allegations implicate at least category (2) from *Natale, supra*, and categories (2) and (3) from *Hill, supra*.

Whether Plaintiff will be able to prove these claims following discovery remains to be seen. However, at this early stage in the litigation, Plaintiff's allegations are enough to survive Defendants' Motion to Dismiss.  Accordingly, Defendants' Motion with respect to Count III of the Second Amended Complaint will be denied.

### D.  The Second Amended Complaint States a Claim for Intentional Infliction of Emotional Distress

Finally, Defendants argue that Plaintiff's claim for IIED in Count VIII fails either because (1) Plaintiff failed to make a showing that she sustained a "tangible physical injury" or (2) because "her allegations still fail to state how Butler's 'conduct [was]...so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" ECF No. 29 at 7 (quoting *Reedy v. Evanson*, 615 F.3d 197, 231–32 (3d Cir. 2010)).

To state a claim for IIED under Pennsylvania law, a plaintiff must make a "showing of 'intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff.'"  *Williams v. Fedarko*, 807 Fed.Appx. 177, 181 (3d Cir. 2020) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)).  That is, "[l]iability on an intentional infliction of emotional distress claim 'has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency,

and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (citing *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)). In addition, "'a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.'" *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010) (quoting *Swisher*, 868 A.2d at 1230)).

Thus, conduct rises to the level required to constitute IIED in only very limited circumstances. *See, e.g. Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. Ct. 1981) (finding IIED where defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (finding IIED where defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

Here, the Court is unpersuaded by Defendants' argument that Plaintiff's claim should be dismissed for failure to "make a 'showing'…[of] tangible physical injury." ECF No. 28 at 7. Plaintiff's allegation that she suffered "an injured wrist" sufficiently pleads a "tangible physical injury." Further, while it is true, as Defendants point out in their Reply, that the court in *Ghrist* noted that liability for IIED must be supported by "competent medical evidence," dismissal of the IIED claim there was based on plaintiff's failure to plead "*any* allegation of physical injury or harm." *Ghrist v. CBS Broad., Inc.*, 40 F.Supp.3d 623, 630–31 (W.D. Pa. 2014) (emphasis added). That is not the case here as Plaintiff has alleged "resulting physical harm due to" Butler's actions and may provide appropriate medical evidence as the case progresses.

Next, Plaintiff's allegations that, in retaliation for recording him, Butler "verbally assault[ed], [struck] and punch[ed]" her and then pressed criminal charges—after allegedly "agree[ing] that [Plaintiff]'s car had been legally parked"—are sufficient at the pleadings stage to

meet the level of outrageousness required under Pennsylvania law.  ECF No. 27 at ¶¶ 36, 44, 159.

Whether Plaintiff can prove her claim remains to be seen.  But, at this stage, Plaintiff need not win

her case—only state facts raising a "plausible" right to relief.  Accordingly, Defendants' Motion

with respect to Count VIII of the Second Amended Complaint will be denied.

### IV.   <u>Conclusion</u>

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED IN PART

and DENIED IN PART.

The portions of Count V of Plaintiff's Second Amended Complaint alleging § 1983 claims

against Defendant Daniele for violation of Plaintiff's First and Fourth Amendment rights in

connection with the initial arrest, search, and detention of Plaintiff on August 19, 2019 will be

DISMISSED WITHOUT PREJUDICE.  Plaintiff may attempt to cure this deficiency by filing an

amended pleading on or before January 19, 2021.  With respect to the post-arrest Fourth

Amendment claim asserted in Count V and the malicious prosecution claim asserted in Count VII,

Plaintiff shall file a more definite statement in the form of an amended pleading, in accordance

with Rule 12(e), identifying the "constitutionally significant restrictions" on her liberty that were

imposed between her release and appearance before the Magisterial District Court, *Schneyder,* 653

F.3d at 321, on or before January 19, 2021.

Otherwise, Defendants' Motion to Dismiss will be DENIED.  But, because the Court finds

that further development of the factual record is necessary to determine Daniele's right to qualified

immunity regarding the post-arrest First Amendment claim asserted in Count V and the abuse of

process claim asserted in Count VI, such denial is without prejudice, pending the development of

a factual record regarding the existence of probable cause.

An appropriate Order will follow.

DATED this 5th day of January, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record